CLOSED

# U.S. District Court
## Northern District of Texas (Dallas)
## CRIMINAL DOCKET FOR CASE #: 3:17-mj-00761-BK-1

Case title: USA v. Galjour et al
Other court case number: 17-MJ-648 USA vs. Michael
Galjour, et al

Date Filed: 10/18/2017
Date Terminated: 10/18/2017

Assigned to: Magistrate Judge Renee
Harris Toliver

**Defendant (1)**

**Michael Galjour**
*TERMINATED: 10/18/2017*

represented by **Federal Public Defender**
Federal Public Defender - Dallas
525 Griffin St
Suite 629
Dallas, TX 75202
214/767-2746
Fax: 214/767-2886
Email: jason_hawkins@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Public Defender*
*Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**                                      **Disposition**

21:846 Possession with Intent to
Distribute Methamphetamine

---

**Plaintiff**

**USA**                                   represented by   **Mark Joseph Tindall-DOJ**
United States Attorneys Office
1100 Commerce Street
Third Floor
Dallas, TX 75242
214-659-8751
Fax: 214-659-8803
Email: mark.tindall@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2017 | | Arrest (Rule 5) of Michael Galjour, Clinton Skipper. Case Number 17-MJ-648 from Western District of New York. (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 1 | Minute Entry for proceedings held before Magistrate Judge Renee Harris Toliver: Initial Appearance as to Michael Galjour held on 10/18/2017. Defendant requested appointed counsel and the FPD was appointed. Defendant waived Rule 5 and 5.1 hearings in this district and elected to have them in originating district. Defendant waived Identity hearing and court found cause that this is the same Michael Galjour as charged in the complaint. Defendant transferred to originating district. Date of Arrest: 10/18/2017 Location interval set to: LC. Attorney Appearances: AUSA - Mark Tindall; Defense - John Nicholson. (Court Reporter: Digital File) (No exhibits) Time in Court - :04. (Interpreter N/A.) (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 2 | MOTION for Pretrial Detention filed by USA as to Michael Galjour. (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 3 | (Document Restricted) CJA 23 Financial Affidavit by Michael Galjour. (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Michael Galjour. Federal Public Defender for Michael Galjour appointed. (Ordered by Magistrate Judge Renee Harris Toliver on 10/18/2017) (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 5 | WAIVER of Rule Rule 5 Hearings by Michael Galjour. (mcrd) (Entered: 10/18/2017) |

| 10/18/2017 | 6 | Report of Proceedings under Rule 5(c)(3) and 5.1 as to Michael Galjour. Defendant is removed forthwith to the district in which he is charged. Paperwork sent to Western District of New York. (Ordered by Magistrate Judge Renee Harris Toliver on 10/18/2017) (mcrd) (Entered: 10/18/2017) |
| 10/18/2017 | 7 | Notice FROM Texas Northern TO Western District of New York, Rochester Division of a Rule 5, Rule 32, or Rule 40 Appearance as to Michael Galjour. Your case number is: 17-MJ-648. Docket sheet and documents attached. *If you wish to designate a different email address for future transfers, send your request to the national list host at InterDistrictTransfer_TXND@txnd.uscourts.gov.* (mcrd) (Entered: 10/18/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/02/2017 12:28:48 | | |
| **PACER Login:** | uw0329:4286542:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-mj-00761-BK |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| JUDGE: RENEE HARRIS TOLIVER | |
|---|---|
| DEPUTY CLERK: J. Amerson | COURT REPORTER/TAPE NO: FTR |
| LAW CLERK: | USPO/PTSO: |
| INTERPRETER: | COURT TIME: 4 min |
| A.M. | P.M. 2:00 | DATE: October 18, 2017 |

☐MAG. NO.   ☐DIST. CR. NO. 3:17-mj-00761-BK *SEALED*   USDJ Magistrate Judge Renee Harris Toliver

UNITED STATES OF AMERICA           §   _Mark Tindall_____, AUSA
                                   §
v.                                 §   _____ ☐
                                   §
                                   §   _John Nicholson_____ ☐
MICHAEL  GALJOUR (1)               §   COUNSEL FOR DEFENDANTS APPT – (A), Retd – (R), FPD – (F)

☒INITIAL APPEARANCE ☐IDENTITY ☐BOND HEARING ☐PRELIMINARY HEARING
☐ DETENTION HEARING ☐COUNSEL DETERMINATION HEARING ☐REMOVAL HEARING ☐EXTRADITION HEARING
☐ HEARING CONTINUED ON _____ CASE NO. _____ ☐OTHER DISTRICT ☐DIVISION
☒ DATE OF FEDERAL ARREST/CUSTODY: 10/18/2017 ☐SURRENDER_____
☒RULE 5/32 ☐APPEARED ON WRIT
☒DEFT FIRST APPEARANCE. DEFT ADVISED OF RIGHTS/CHARGES ☐PROBATION/SUPERVISED RELEASE VIOLATOR
☐ DEFT FIRST APPEARANCE WITH COUNSEL.
☐ DEFT. ☐MW (MATERIAL WITNESS) _____ APPEARED ☐WITH ☐WITHOUT COUNSEL
☒REQUESTS APPOINTED COUNSEL.
☒FINANCIAL AFFIDAVIT EXECUTED.
☒ORDER APPOINTING FEDERAL PUBLIC DEFENDER.
☐ PRIVATE COUNSEL APPOINTED _____
☐ DEFT HAS RETAINED COUNSEL _____
☐ ARRAIGNMENT SET ☐DETENTION HEARING SET _____

☐ PRELIMINARY HEARING SET _____   ☐BOND HEARING SET _____
☐ COUNSEL DETERMINATION HEARING SET _____
☐ IDENTITY/REMOVAL HEARING SET _____
☐ BOND ☐SET ☐REDUCED TO $ _____ ☐CASH ☐ SURETY ☐10% ☐ PR ☐UNS ☐3RD PTY ☐MW
☐ NO BOND SET AT THIS TIME, ____ DAY DETENTION ORDER TO BE ENTERED.
☐ ORDER OF TEMPORARY DETENTION/COMMITMENT PENDING HEARING ENTERED.
☐ ORDER OF DETENTION PENDING TRIAL ENTERED.
☐ DEFT ADVISED OF CONDITIONS OF RELEASE.
☐ BOND EXECUTED ☐DEFT ☐MW RELEASED ☐STATE AUTHORITIES ☐INS
☒ DEFT ☐MW REMANDED TO CUSTODY.
☒ DEFT ORDERED REMOVED TO ORIGINATING DISTRICT.
☒WAIVER OF ☐PRELIMINARY HEARING ☒RULE 5/32 HEARING ☐DETENTION HEARING
☐ COURT FINDS PROBABLE CAUSE ☒ID ☐PC.
☐ DEFT FAILED TO APPEAR. ORAL ORDER FOR ISSUANCE OF BENCH WARRANT
☐ GOVERNMENT TO NOTIFY FOREIGN CONSULAR.
☐ REMARKS:_____

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 1 8 2017
CLERK, U.S. DISTRICT COURT
By _____
Deputy

02/09) Criminal Complaint

# United States District Court

for the
Western District of New York

STATES DISTRICT
FILED
SEP 2 9 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

United States of America                    )
)
v.                                          )        17-MJ- 648
MICHAEL DOWNEY, MICHAEL MADISON,            )
MICHAEL GALJOUR and                 ,       )        3:17- MJ - 761 BK
)
*Defendants*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about and between July 15, 2016 and December 7, 2016, in the county of ___Monroe___ in the Western District of New York, the defendants violated __21__ U.S.C. § _846_, an offense described as follows:

the defendants conspired to possess, with intent to distribute, a mixture or substance containing methamphetamine.

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
*Complainant's signature*

BRIAN HANLEY, Special Agent
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __September 29__, 2017

_____
*Judge's signature*

City and State: __Rochester, New York__

Hon. Jonathan W. Feldman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

V.

17-MJ- 648

MICHAEL DOWNEY,
MICHAEL MADISON,
MICHAEL GALJOUR,

Defendants

STATE OF NEW YORK )
COUNTY OF MONROE ) SS:
CITY OF ROCHESTER )

BRIAN HANLEY, being duly sworn, deposes and says:

1.    I am a Special Agent with the Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq. and Title 18, United States Code, Section 2516(1).

2.    I have been an employee of the DEA since December of 2001 and have received sixteen weeks of specialized training in narcotics investigations at the DEA training academy located in Quantico, Virginia. I was assigned to the Long Island District Office from December of 2001 to August of 2003. I have been assigned to the Rochester, New York Resident Office since August of 2003. During this time, I have participated in cases involving

the distribution of cocaine, cocaine base, heroin, methamphetamine, MDMA, marijuana, Gama Hydroxy Butrate (GHB), and anabolic steroids. My participation in these cases has included, but is not limited to, the monitoring and recording of court-authorized Title III interceptions; execution of search warrants; undercover operations; direction of confidential sources; and the debriefing of defendants and others involved in the distribution and consumption of illegal drugs. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York. In addition, I have completed the DEA Clandestine Laboratory certification course.

3. This affidavit is submitted in support of a criminal complaint charging Michael DOWNEY, Michael MADISON, ████████████ and Michael GALJOUR with a violation of Title 21, United States Code Section 846 (conspiracy to possess with intent to distribute a mixture or substance containing methamphetamine, a Schedule II controlled substance).

4. The information in this affidavit is based upon my personal knowledge obtained through my participation in this investigation, reports and information received from other law enforcement agents, interviews of witnesses, analysis of records and video/audio recordings as well as information received from confidential sources (CS) and cooperators. I have participated in this investigation since its inception and am familiar with all aspects of this investigation. The information provided by the CS and other cooperators has been corroborated through independent investigation, to include surveillance, records analysis, and

2

recordings. It should be noted that the CS is cooperating with law enforcement in an effort to receive favorable consideration for pending charges. Further, it should be noted that the CS admitted to having negotiations and purchases of methamphetamine, which were unknown to law enforcement, from another individual, while cooperating in connection with an investigation of that individual. Also, the CS admitted to purchases of methamphetamine, which were unknown to law enforcement, from one of the individuals identified in this complaint, as described in more detail in paragraph 15 of this affidavit. Further, it should be noted the CS admitted to receiving a quantity of methamphetamine from another individual and then disposing of it by flushing the methamphetamine down a toilet, during the time he/she was cooperating and that this was not known to law enforcement at the time. Further, it should be noted that the CS failed to report to his/her supervising probation officer in another district at an appointment scheduled for March 16, 2017. Further, the CS admitted to lying to his supervising probation officer about his arrival time in that district, as well as offering weather-related reasons, specifically a snow storm, for delay in travel from the Western District of New York to that district, which did not appear to be consistent with the time-frame of weather-related events which could result in such delays. The CS also provided a positive screen for amphetamine and methamphetamine on March 17, 2017, and admitted to using methamphetamine on March 15, 2017, and was taken into custody as a result of such violations on or about March 24, 2017.

## FACTS ESTABLISHING PROBABLE CAUSE

5.     On June 16, 2016, your affiant and Investigator Brandon Goater met with a Confidential Source (CS) in regards to Michael DOWNEY, who is known to the CS as "Mike

3

ROCTOP".    During  this  meeting,  the  CS  explained  that DOWNEY  distributes methamphetamine in the Rochester, New York, area. The CS stated that DOWNEY sells ounces of methamphetamine for $1,500 for an ounce. The CS also explained that DOWNEY utilizes cellular telephone number 585-472-4706 and lives near Scottsville Road in Rochester, New York.

6.       On June 21, 2016, your affiant received subpoenaed information from Verizon Wireless in regards to cellular telephone number 585-472-4706. An analysis of this information revealed that this telephone number is subscribed to Michael DOWNEY at 90 Scottsville Road, Rochester, New York.

7.       On June 22, 2016, the CS showed your affiant a photograph of DOWNEY. The CS captured this photograph by taking a phone photograph screen shot from DOWNEY's profile page on the public social media dating application entitled Grinder. Upon review of this photograph, your affiant was able to positively identify DOWNEY by comparing a New York Driver's license photo of DOWNEY and the photograph shown to your affiant by the CS.

8.       On July 14, 2016, your affiant and Investigators Brandon Goater and Wilfredo Carbonel met with the CS at the Rochester Resident Office. Shortly thereafter, your affiant showed the CS a photographic array containing a photograph of DOWNEY, along with five other photographs of different people. Your affiant asked the CS if he/she recognized anyone in this photographic array. Your affiant explained that the photographs may be old and that appearances can change over time. The CS positively identified the photograph marked

4

number five as Mike "ROCTOP". The CS then wrote "Mike ROCTOP" and signed and dated under the number five photograph which is the photograph of DOWNEY. Your affiant and Investigators Goater and Carbonel then also signed the form.

9.     On July 15, 2016, Investigators Carbonel and Goater met with the CS and formulated plans to conduct a controlled purchase of methamphetamine from DOWNEY. Shortly thereafter, Investigators Goater and Carbonel searched the CS for contraband with negative results. Investigator Goater then provided the CS with $300.00 in United States currency. The CS then spoke with DOWNEY and arranged to meet at DOWNEY's residence located at 90 Scottsville Road, Rochester, New York.     Shortly thereafter, Investigators Goater and Carbonel observed the CS enter 90 Scottsville Road. A couple of minutes later, Investigators Goater and Carbonel observed the CS exit 90 Scottsville Road and followed the CS to a predetermined meet location where the CS turned over approximately 3.5 grams of suspected methamphetamine to Investigator Goater. Investigators Goater and Carbonel then searched the CS for contraband with negative results. The CS then told Investigator Goater that he/she purchased the methamphetamine from DOWNEY for $300.00.

10.     Investigator Goater performed a field test of the suspected methamphetamine purchased from DOWNEY described above. The field test returned a positive result for the presence of methamphetamine.

11.     On August 2, 2016, Investigators Carbonel and Goater met with the CS and formulated plans to conduct a second controlled purchase of methamphetamine from

5

DOWNEY. Shortly thereafter, Investigators Goater and Carbonel searched the CS for contraband with negative results. Investigator Goater then provided the CS with $300.00 in United States currency. The CS then spoke with DOWNEY and agreed to meet at 5 Stebbins Street located in the City of Rochester, New York. Previous investigation revealed that DOWNEY had recently moved to 5 Stebbins Street, Rochester, New York. Shortly thereafter, Investigators Goater and Carbonel observed the CS enter 5 Stebbins Street. A couple of minutes later, Investigators Goater and Carbonel observed the CS exit 5 Stebbins Street and followed the CS to a predetermined meet location where the CS turned over approximately two grams of suspected methamphetamine to Investigator Goater. Investigators Goater and Carbonel then searched the CS for contraband with negative results. The CS then told Investigator Goater that he/she purchased the methamphetamine from DOWNEY for $300.00.

12.    Investigator Goater performed a field test of the suspected methamphetamine purchased from DOWNEY described above. The field returned a positive result for the presence of methamphetamine.

13.    On August 5, 2016, Investigators Carbonel and Goater met with the CS and formulated plans to conduct a third controlled purchase of methamphetamine from DOWNEY. Shortly thereafter, Investigators Goater and Carbonel searched the CS for contraband with negative results. Investigator Goater then provided the CS with $500.00 in United States currency. The CS then spoke with DOWNEY who agreed to meet the CS at the Hilton Garden Inn located at 155 East Main Street, Rochester, New York. Shortly

6

thereafter, Investigators Goater and Carbonel observed DOWNEY arrive at the Hilton Garden Inn. A couple of minutes later, Investigators Goater and Carbonel observed DOWNEY leave the location. Investigators Goater and Carbonel then met with the CS at a predetermined meeting location where the CS turned over approximately 5 grams of suspected methamphetamine to Investigator Goater. Investigators Goater and Carbonel then searched the CS for contraband with negative results. The CS then told Investigator Goater that he/she purchased the methamphetamine from DOWNEY for $500.00.

14. Investigator Goater performed a field test of the suspected methamphetamine purchased from DOWNEY as described above. The field test returned a positive result for the presence of methamphetamine.

15. On August 5, 2016, the CS met with your affiant and Investigators Goater and Carbonel and provided additional information regarding DOWNEY. The CS stated that he/she has known DOWNEY for approximately one year and has known DOWNEY to be involved with the selling of methamphetamine the entire time. The CS explained that in April of 2016, he/she purchased two ounces of methamphetamine from DOWNEY for $2,400.00. The CS also explained that in June of 2016, he/she purchased one ounce of methamphetamine from DOWNEY. The CS stated that for this transaction he/she paid DOWNEY $400.00 cash. DOWNEY then instructed the CS to send the remaining $800.00 directly to DOWNEY's methamphetamine supplier, a person named Michael GALJOUR, using PayPal. Your affiant knows PayPal to be a worldwide online payment system that supports online money transfers and serves as an electronic alternative to traditional paper

7

methods of payment like checks and money orders. The CS said that DOWNEY explained to the CS that he wanted the CS to do this to get GALJOUR the money faster. The CS then sent $800.00 to Michael GALJOUR using PayPal. The CS also explained that during the last week of July 2016, he/she bought less than a gram of methamphetamine from DOWNEY for $200.00. These purchases reflected in this paragraph were not at law enforcements direction and were unknown to law enforcement.

16.    The CS provided your affiant with photograph screen shots of the PayPal transaction receipts with GALJOUR described in paragraph fifteen, above. These two photographs of one transaction show that on June 24, 2016, the CS sent GALJOUR $800.00. The receipt of the payment is shown as verified on the receipt to the email address galjoursalon@gmail.com. The receipt also shows a photograph of GALJOUR.

17.    Analysis of subpoenaed information from Verizon Wireless revealed that between the dates of July 4, 2016, and August 3, 2016, telephone number 585-472-4706, which is the telephone number which the investigation revealed is subscribed to by DOWNEY as described in this affidavit, and telephone number 214-425-8292 contacted each other 92 times. Subpoenaed information from AT&T revealed that telephone number 214-425-8292 is subscribed to by Michael GALJOUR at 4317 Hartford Street, Dallas, Texas 75219.

18.    On August 13, 2016, your affiant received a Texas Department of Motor Vehicle photograph of GALJOUR. Your affiant was able to compare the photograph from the Department of Motor Vehicles of GALJOUR and the photograph on the PayPal Payment

8

receipt of GALJOUR provided by the CS and confirm that both photographs are of the same person.

19.     On September 23, 2016, Investigators Carbonel and Goater met with the CS and formulated plans to conduct a fourth controlled purchase of methamphetamine from DOWNEY. Shortly thereafter, Investigators Goater and Carbonel searched the CS for contraband with negative results. Investigator Goater then provided the CS with $450.00 in United States currency. The CS then spoke with DOWNEY and agreed to meet at 5 Stebbins Street located in the City of Rochester, New York. Shortly thereafter, Investigators Goater and Carbonel observed the CS enter 5 Stebbins Street. A couple of minutes later, Investigators Goater and Carbonel observed the CS exit 5 Stebbins Street and followed the CS to a predetermined meet location where the CS turned over approximately four grams of suspected methamphetamine to Investigator Goater. Investigators Goater and Carbonel then searched the CS for contraband with negative results. The CS then told Investigator Goater that he/she purchased the methamphetamine from DOWNEY for $450.00.

20.     Investigator Goater performed a field test of the suspected methamphetamine purchased from DOWNEY as described above. The field test returned a positive result for the presence of methamphetamine.

21.     On November 10, 2016, Investigator Goater, as well as RPD Investigator Fiorica, met with the CS and formulated plans to conduct a fifth controlled purchase of methamphetamine from DOWNEY. Shortly thereafter, Investigators Goater and Fiorica searched the CS for

9

contraband with negative results. Investigator Goater then provided the CS with $600.00 in United States currency. The CS then spoke with DOWNEY and agreed to meet at the 7 Eleven Store located at 622 Park Avenue, Rochester, New York. Shortly thereafter, Investigators Goater and Fiorica observed DOWNEY arrive at the 7 Eleven Store. A couple of minutes later, Investigators Goater and Fiorica observed DOWNEY leave the location. Investigators Goater and Fiorica then met with the CS at a predetermined meet location where the CS turned over approximately seven grams of suspected methamphetamine to Investigator Goater. Investigators Goater and Fiorica then searched the CS for contraband with negative results. The CS then told Investigator Goater that he/she purchased the methamphetamine from DOWNEY for $600.00.

22.     Investigator Goater performed a field test of the suspected methamphetamine purchased from DOWNEY as described above. The field test returned a positive result for the presence of methamphetamine.

23.     On November 15, 2016, Investigator Goater received a New York State search warrant for the residence of Michael DOWNEY located at 5 Stebbins Street, Rochester, New York. This warrant was signed by Monroe County Court Judge Christopher S. Ciaccio.

24.     On November 21, 2016, at approximately 8:30 AM, law enforcement executed this search warrant. Shortly thereafter, DOWNEY was detained in the living room of the location. A subsequent search resulted in the seizure of the following items:

10

a.    Approximately 44.37 grams of suspected methamphetamine which was seized from a black colored bag located under the bed in a bedroom;[1]

b.    Methamphetamine smoking pipes and a container of mouth spray seized from the same black colored bag as described in paragraph 24A of this affidavit;

c.    A piece of mail addressed to DOWNEY at 5 Stebbins Street, Rochester, New York, as well as methamphetamine smoking pipes seized from the kitchen counter.

25.    On November 21, 2016, at approximately 8:55 AM, while still at the residence, your affiant advised DOWNEY of his Miranda warnings. DOWNEY answered that he understood his rights and said he would answer questions. When your affiant read these rights to DOWNEY he was sitting on the edge of his bed handcuffed. Your affiant, as well as Investigators Goater and Carbonel were with DOWNEY in the bedroom.

26.    DOWNEY then explained that he receives methamphetamine from Michael GALJOUR who lives in Dallas, Texas, and his partner, who law enforcement later identified as ▮▮▮▮▮▮▮▮▮▮▮▮  Your affiant then explained to DOWNEY that he would be driven to the Rochester Police Department so that he could be processed and they could talk more. DOWNEY was then transported in a patrol car to the Rochester Police Department by uniformed officers.

27.    At approximately 9:50 AM, your affiant and Investigators Goater and Carbonel continued interviewing DOWNEY at the Rochester Police Department. DOWNEY was

---

[1] On November 23, 2016, your affiant performed a field test of this suspected methamphetamine. The field test returned a positive result for the presence of methamphetamine.

11

sitting in a chair in an interview room and was not handcuffed. Investigator Carbonel gave DOWNEY a bottle of water and asked DOWNEY if he was okay. DOWNEY said, "I am okay."

28.     Your affiant then explained to DOWNEY that his Miranda warnings still applied and asked if he was still willing to answer questions. DOWNEY answered, "Yes." DOWNEY then explained that he started using methamphetamine in 2005. DOWNEY stated that he currently uses a "ball" of methamphetamine, which is 3.5 grams, a week.

29.     DOWNEY stated that he purchased methamphetamine from Michael GALJOUR who lives in Dallas, Texas. DOWNEY said that he met GALJOUR on a chat line approximately five to six months ago, that they started talking about methamphetamine and GALJOUR explained that he would ship DOWNEY methamphetamine.     Since then, DOWNEY has received at least one ounce of methamphetamine a month from GALJOUR and that had occurred for the past five to six months. DOWNEY said he has paid GALJOUR $700 for an ounce of methamphetamine and that he has called or texted GALJOUR to order the methamphetamine. DOWNEY said he would then send payment in cash or use money grams to pay GALJOUR. Your affiant knows MoneyGram to be a money transfer company which allows a customer to send money to another individual using the internet or money orders purchased at selected retail businesses. The recipient of the money gram can pick up the payment in cash at a MoneyGram agent location, have the payment sent directly to their bank account, or have the payment sent to the receiver's debit card or mobile wallet account. Lastly, the payment can be delivered directly to the receiver's home address. DOWNEY also

12

explained that when GALJOUR received the money he would ship the methamphetamine via Fed Ex or the United States Postal Service to DOWNEY's residence or another address provided by DOWNEY. DOWNEY stated that on one occasion he received a shipment from GALJOUR at a hotel in Erie, Pennsylvania. DOWNEY could not remember the name of the hotel at this time.

30.    DOWNEY further explained that the most recent shipment of methamphetamine that he received from GALJOUR was in the last 10 days and that he had received one ounce of methamphetamine for $700 via United States Postal Service. DOWNEY said he paid $350 for this and that a friend of his paid $350. When the shipment arrived, DOWNEY said he then gave the friend a half-ounce portion and that he took his half-ounce portion with him to New York City. DOWNEY said he used some of it and shared the rest with friends during this trip.    DOWNEY stated that GALJOUR utilizes telephone number 214-425-8292. DOWNEY also explained that he ships the money to GALJOUR at 4317 Hartford Street, #212, Dallas, Texas 75219. A check with the Texas Department of Motor Vehicles revealed that GALJOUR lists this address on his driver's license.

31.    DOWNEY also explained that [redacted] works for GALJOUR and helps ship the methamphetamine. DOWNEY said that during past transactions with GALJOUR, [redacted] gave DOWNEY the shipping numbers of packages containing methamphetamine. Downey also said that during past transactions, GALJOUR explained to DOWNEY that he was traveling at the time and that DOWNEY should contact [redacted] to order the methamphetamine. DOWNEY explained that he has received methamphetamine from

13

 one or two times. DOWNEY stated that ▇▇▇▇ utilizes telephone number 214-562-5472. An inquiry of this telephone number utilizing a law enforcement information database showed that it is subscribed to ▇▇▇▇ at ▇▇▇▇ ▇▇▇▇. A check with the Facebook page of GALJOUR also revealed that he is Facebook friends with ▇▇▇▇

32.     DOWNEY also explained that he has split payments for shipments of methamphetamine with an individual identified as Michael MADISON. MADISON utilizes telephone number 315-573-0321. DOWNEY stated that he and MADISON pitched in and bought half an ounce of methamphetamine from GALJOUR a few months ago.

33.     During this interview, your affiant gave DOWNEY his telephone, which was initially seized as evidence when DOWNEY was taken into custody during the search warrant execution. DOWNEY stated that his telephone number for this phone was 585-472-4706. Your affiant asked if your affiant and Investigators Goater and Carbonel could have consent to look at the contents on this telephone. DOWNEY said "yes" and unlocked the phone for the investigators by entering a passcode. At the request of your affiant, DOWNEY showed the text messages between himself, GALJOUR and ▇▇▇▇. DOWNEY also gave permission to your affiant to photograph these communications.   During this time, Investigator Carbonel noticed that listed with the telephone number utilized by "▇▇▇▇" was the name ▇▇▇▇.   Investigator Carbonel asked DOWNEY if this was the "▇▇▇▇" previously discussed as working with GALJOUR to distribute methamphetamine. DOWNEY answered, "Yes."

14

34.     DOWNEY also explained that he ordered three ounces of methamphetamine from GALJOUR on November 18, 2016, and that he is still waiting for the package to arrive. DOWNEY said he placed this order by a telephone call and a text message to GALJOUR. DOWNEY stated that he sent GALJOUR $2,100 cash on November 19, 2016, as payment for the three ounces of methamphetamine. DOWNEY said he received $2,600 from MADISON for this order. DOWNEY said he kept $500 and sent the remaining $2,100 to GALJOUR for the three ounces of methamphetamine. DOWNEY said MADISON is supposed to receive two ounces of methamphetamine out of this shipment and DOWNEY will receive one ounce. DOWNEY said he sent the payment to GALJOUR's address at 4317 Hartford Street, #212, Dallas, Texas 75219. DOWNEY does not know when the package will come or what carrier GALJOUR will use. DOWNEY stated that the package will be shipped to his residence at 5 Stebbins Street, Rochester, New York.

35.     DOWNEY stated that, in the past when he has received a shipment that involved MADISON, he would call MADISON when it arrived. DOWNEY said that MADISON would then come to DOWNEY'S house to pick up his portion of the methamphetamine or meet DOWNEY somewhere to pick up his portion of the methamphetamine.

36.     DOWNEY then agreed to cooperate with law enforcement. Your affiant explained to DOWNEY that your affiant would file federal charges against DOWNEY in the near future and that no promises were being made regarding the possible charges and DOWNEY's cooperation with law enforcement. DOWNEY was given his cellular telephone by your affiant and released pending filing of those future charges.

15

37.     On November 22, 2016, at approximately 11:03 AM, your affiant was contacted by
DOWNEY via text message.  DOWNEY explained that the FedEx Envelope sent to him
from Michael GALJOUR containing three ounces of crystal methamphetamine had arrived
at his residence.  DOWNEY also confirmed that this is the same shipment described in
paragraph 34 of this affidavit, in which MADISON pre-purchased two of the ounces of crystal
methamphetamine. Your affiant instructed DOWNEY not to open the envelope. Your affiant
then contacted Investigators Goater and Carbonel to respond to 5 Stebbins Street, Rochester,
New York.

38.     At approximately 11:40 AM, Investigators Goater and Carbonel arrived at 5 Stebbins
Street.  DOWNEY then turned over the unopened FedEx Envelope to the investigators.
Investigators Goater and Carbonel photographed the unopened FedEx envelope.   The
envelope was addressed to Louise Evans at 5 Stebbins Street, Rochester, New York 14620.
The return address was John Newman 1414 Cedar Springs, Dallas, Texas 75219, (214)562-
4444.  The envelope had a tracking number of 784714069228.  DOWNEY then signed a
Rochester Police Department Consent to Search Form for the Fed Ex envelope, indicating
that he provided permission for law enforcement to search the envelope.

39.     DOWNEY also provided a written supporting deposition regarding the FedEx
envelope. In sum and substance in this deposition, DOWNEY said that on November 22,
2016, he received the envelope. He was waiting for this package to arrive from Dallas, Texas.
DOWNEY believed that this package contained methamphetamine for which DOWNEY
paid $2,100.00 to Michael GALJOUR.  The package was still sealed and unopened.  In the

16

deposition, DOWNEY said that he called your affiant. In the deposition, DOWNEY further said Investigators Goater and Carbonel then came to his residence to collect the unopened envelope. In the deposition, DOWNEY said he then turned it over to them as he received it.

40.   Your affiant is aware that Investigators Goater and Carbonel then opened the FedEx envelope. Law enforcement found the envelope contained three sealed "stink sack" envelopes taped inside a magazine and the "stink sack" envelopes each contained a substance believed to be methamphetamine. Investigators Carbonel and Goater performed field tests on the substance suspected of being methamphetamine and received positive results.

41.   On November 23, 2016, Investigator Carbonel transferred custody of the evidence to your affiant for federal prosecution. Your affiant opened the Rochester Police Department sealed evidence bag, which contained the methamphetamine and the magazine from the FedEx envelope in order to separate them for processing and analysis. Your affiant determined that the substance suspected of being methamphetamine weighed approximately 126.80 grams.

42.   Your affiant later received information from FedEx regarding the envelope bearing tracking number 784714069228 which was seized by law enforcement as described in the above paragraphs. In reviewing this information, your affiant learned that the envelope was sent from Dallas, Texas, at 4:36 PM on November 21, 2016. The envelope was delivered to the recipient and left at the front door on November 22, 2016 at 10:58 AM.   This

17

information reveals that DOWNEY contacted your affiant immediately upon the delivery of this Fed Ex package sent by GALJOUR which contained methamphetamine.

43.     On December 7, 2016, your affiant and Investigators Goater and Carbonel met with DOWNEY regarding MADISON. During this meeting, DOWNEY showed your affiant text messages which he exchanged with MADISON, who was using telephone number 315-573-0321. DOWNEY consented to your affiant taking photographs of the text messages, which your affiant did. In one of these messages, occurring on November 6, 2016, MADISON asked DOWNEY "any word?" In another text message from the same date, DOWNEY asked MADISON what his schedule was for the next day. In another text message from the same day, DOWNEY further explained to MADISON that he was nervous about tomorrow because "he said he sent a replacement for 1 that must have been loss. He said he will send the second later in month. Will let you know when he texts me back today and once this is replaced for you I think you may have heard I am no longer using, and have not been for the last 3 weeks so you will have to find your own source for this. It's just been making me sick and I want a life change for better." MADISON replied, "No problem, my only concern is what is owed to me. I actually found another source. Although it may do me well to follow your lead and divorce her as well." The CS then explained that he/she would text MADISON the next day.

44.     Your affiant understands through investigation that the context of these messages is about a shipment of three ounces of crystal methamphetamine, which was sent by GALJOUR to DOWNEY. This shipment of methamphetamine was seized by law enforcement. As

18

discussed above, the investigation has revealed that MADISON was to receive two of the ounces and DOWNEY was to receive one ounce. This investigation has revealed that this shipment of three ounces of crystal methamphetamine was being sent to DOWNEY's residence and that MADISON was expecting to pick up his two ounces of the shipment from DOWNEY. The investigation has further revealed that MADISON already paid DOWNEY $2,600.00 for the two ounces. During this text message communication, it appears as though MADISON did not know that the shipment had been seized by law enforcement or that DOWNEY was cooperating with law enforcement. During this text message conversation, MADISON asked DOWNEY if he has received the package of methamphetamine yet. DOWNEY explained that the package must have been lost in the mail, when in reality it was seized by and in the custody of law enforcement.

45.     Your affiant also consensually photographed text messages between DOWNEY and MADISON from on or about December 7, 2016. In one of these messages, DOWNEY said to MADISON, "Hey both are here and ready to pick up when can you come get it". MADISON answered DOWNEY saying "Can come very soon if you are around". DOWNEY responded by explaining in the text message that he would not be at his house until after 12:30 PM. MADISON agreed to come to DOWNEY's house around 1:00 PM in his text response. Further, at approximately 12:10 PM, DOWNEY sent a text message to MADISON confirming the 1:00 meet. MADISON stated that he would be there at 1:00 PM. Shortly thereafter, MADISON sent a text to DOWNEY explaining that he would be at DOWNEY's residence in 10 minutes. Your affiant understands through the investigation that the context of these messages is that DOWNEY, at the direction of law enforcement,

19

informed MADISON that the two ounces of methamphetamine for which MADISON had previously paid and which MADISON was expecting, had arrived at DOWNEY's residence. MADISON then confirmed with DOWNEY that he would come pick up the methamphetamine from DOWNEY.

46.     On December 7, 2016, at approximately 12:30 PM, surveillance was established in the vicinity of 5 Stebbins Street, Rochester, New York. Your affiant, along with Investigators Carbonel, Goater, and Monroe County Sheriff's Officer Deputy Vinny Ray were positioned inside of 5 Stebbins Street. At approximately 1:03 PM, members of the Greater Rochester Area Narcotics Enforcement Team observed a tan colored van pull into the driveway of the residence and park. MADISON exited the vehicle and walked onto the front porch of the residence. Your affiant and the investigators then heard MADISON knock on the front door of the residence. Investigator Carbonel then opened the door and Investigator Goater displayed his badge to MADISON, identified himself as a police officer and instructed MADISON to enter the residence. Your affiant then identified himself as a federal agent and handcuffed MADISON behind his back. Your affiant emptied MADISON's pockets and placed the contents, which included a cellular telephone, keys, wallet and approximately $74.00 in United States currency, on a countertop in the living room. Your affiant then asked MADISON what he was doing there. MADISON said that he was there to "hook up" with Mike.

47.     At approximately 1:10 PM, your affiant advised MADISON of his <u>Miranda</u> rights utilizing a DEA 13a Card, as witnessed by Investigator Goater. Your affiant asked

20

MADISON if he understood these rights. MADISON responded that he did. Your affiant asked MADISON if he wished to answer some questions. MADISON responded that he was willing. At this time, MADISON was sitting up against a desk in the living room of the residence with his hands behind his back in handcuffs. Your affiant was standing beside MADISON, while Investigators Carbonel and Goater were standing on the other side of the living room.

48.    Your affiant asked MADISON for his telephone number. MADISON stated that his cellular telephone number was 315-573-0321. Your affiant then returned MADISON's cellular telephone and asked MADISON to show the text messages regarding his coming to 5 Stebbins Street. Madison said, "No." Your affiant then explained to MADISON that your affiant knew that MADISON had come to the location to pick up two ounces of methamphetamine and that the information surrounding the deal was sent via text messaging. Your affiant also told MADISON that he was going to be arrested for conspiracy to possess methamphetamine.    MADISON then explained that he was there to pick up methamphetamine and that he wanted to cooperate with law enforcement.

49.    MADISON was then transported to the DEA Rochester Resident Office, by a Rochester Police Department marked unit, for further questioning and processing.

50.    At approximately 1:23 PM, your affiant and Investigator Goater interviewed MADISON at the DEA Rochester Resident Office. During this interview, MADISON was

21

seated at a table not handcuffed. At this time, your affiant again informed MADISON of his Miranda rights. This interview was video and audio recorded.

51.     During this interview, MADISON said, in sum and substance, that he was at 5 Stebbins Street to pick up two ounces of methamphetamine from DOWNEY. MADISON said he prepaid DOWNEY $2,600.00 a couple of weeks earlier for the methamphetamine. MADISON said he was planning on using the two ounces of methamphetamine and not selling it. MADISON said he "stockpiles methamphetamine because, at times, it is hard to get". MADISON said he uses from one milliliter to 20 milliliters of methamphetamine per day to alleviate back pain. MADISON said he mixes it with water then uses a syringe to inject it into his arm.

52.     During the interview, MADISON said he remembers purchasing methamphetamine from DOWNEY two other times. MADISON recalled the first time was sometime around August of 2016.   About that incident, MADISON recalled purchasing one ounce of methamphetamine for $1,300.00.      MADISON said he prepaid DOWNEY for the methamphetamine and then waited for two days before he picked it up at the Stebbins Street address. MADISON said he used all of that methamphetamine, except what he shared with friends.

53.     MADISON recalled that, about the second time, he purchased methamphetamine from DOWNEY approximately two weeks after the first time. MADISON said he purchased one ounce of methamphetamine for $1,300.00, for which he also prepaid money to

22

DOWNEY. MADISON said that this time DOWNEY picked up the money at MADISON's house. MADISON said he later went to the Stebbins Street address to pick up the methamphetamine.

54. MADISON stated that he shares the methamphetamine that he purchases with friends. However, MADISON further explained that on one occasion he sold a friend $100.00 worth of methamphetamine.

55. At approximately 2:05 PM, this interview ended. Shortly thereafter, MADISON was released pending the filing of federal charges.

56. On January 31, 2017, your affiant conducted an analysis of the text messages between DOWNEY and GALJOUR. These text messages were consensually given to your affiant by DOWNEY as previously described in paragraph 33 of this affidavit. In detail your affiant reviewed these text messages between DOWNEY at cellular telephone number 585-472-4706 and GALJOUR at cellular telephone number 214-425-8292 which show a conversation on November 2, 2016, in which GALJOUR asked DOWNEY, "Address sending to please?" DOWNEY answered "My place", to which GALJOUR answered "Can you send me that again?" DOWNEY then responded with "5 Stebbins Street Rochester, NY 14620". GALJOUR then sent DOWNEY a text message which showed a FedEx receipt bearing tracking number 784532832947. Your affiant conducted an inquiry with FedEx in regards to tracking number 784532832947. This inquiry revealed that on November 2, 2016, at approximately 3:13 PM, a package bearing FedEx tracking number 784532832947 was sent

23

from Dallas, Texas, to Rochester, New York. This inquiry also revealed that this package was delivered to its destination on November 3, 2016, at 8:53 AM.

58.     Further analysis of the text messages between DOWNEY at cellular telephone number 585-472-4706 and GALJOUR at cellular telephone number 214-425-8292 revealed a photograph screenshot of a money gram receipt bearing reference number 92548409 for $700.00 sent from DOWNEY to GALJOUR on November 4, 2016. Your affiant conducted an inquiry with MoneyGram International Inc. which revealed that the money gram transaction bearing reference number 92548409 for $700.00 was sent on November 4, 2016, at approximately 11:38 AM, by Michael DOWNEY. The information received by your affiant from MoneyGram International Inc. also revealed that this money gram transaction was received on November 4, 2016, at approximately 6:02 PM, by Michael GALJOUR.

59.     This analysis of the text messages between GALJOUR and DOWNEY also show a photograph screen shot of a USPS shipping receipt, dated November 4, 2016, for a package with tracking number EL279592387US. A check with USPS revealed that on November 4, 2016, at approximately 5:50 PM, a package bearing USPS tracking number EL279592387US was sent from Dallas, Texas, to Erie, Pennsylvania. The USPS records also show that this package was delivered on November 6, 2016, at approximately 10:23 AM, and was signed for by "J GDAUEP". These text messages also contain a screenshot from DOWNEY to GALJOUR that shows a hotel address for DOWNEY at 7865 Perry Highway, Erie, PA 16509. This photograph screenshot includes a photograph of a hotel room and reservation information on the screen. An address check shows this to be the Red Roof Inn. It should be

24

noted that your affiant previously received information from DOWNEY explaining that in the past DOWNEY received a shipment of methamphetamine from GALJOUR at a hotel in Erie, PA. At the time that DOWNEY gave this information to your affiant he did not remember the name of the hotel.

60.     These text messages from DOWNEY to GALJOUR also show a money gram receipt, dated November 10, 2016, bearing reference number 39136465. A check with MoneyGram International Inc. revealed that the money gram transaction bearing reference number 39136465 for $700.00 was sent on November 10, 2016, at approximately 8:38 AM, by Michael DOWNEY. The MoneyGram International Inc. records also revealed that this money gram was received by Michael GALJOUR. No receiving date was listed by MoneyGram.

61.     Analysis of these text messages between DOWNEY at cellular telephone number 585-472-4706 and GALJOUR at cellular telephone number 214-425-8292 revealed a photograph screenshot of a money gram receipt bearing reference number 58634235. Information received by your affiant from MoneyGram International Inc. revealed that on November 10, 2016, at approximately 11:50 AM, Michael DOWNEY utilized a money gram bearing reference number 58634235 to send $700.00. According to MoneyGram International Inc. records, this money gram was received on November 11, 2016, at 10:36 AM, by

These text messages also contain a conversation between DOWNEY and GALJOUR, which is dated November 10, 2016, in which DOWNEY tells GALJOUR, "Let me know you got it. Send to my house". GALJOUR responded, "Got it" and then asks, in a

25

separate text message? "Hey do you have a tracking number for that package". GALJOUR answered, "Hey babe sorry package was not shipped today. We just found out that my guy is in the hospital. But we have a backup source but it won't ship out until tomorrow".

62.    In his post arrest statement on November 21, 2016, DOWNEY explained that he ordered three ounces of methamphetamine on November 18, 2016, from GALJOUR. DOWNEY said he placed this order via a telephone call and a text message to GALJOUR. DOWNEY said he sent GALJOUR $2100 cash on November 19, 2016, which was to pay for the three ounces of methamphetamine. DOWNEY said he did not know when the package would come or what carrier GALJOUR would use. DOWNEY stated that the package would be shipped to his residence. A review of the text messages between DOWNEY and GALJOUR reveals a photograph screenshot of a USPS package receipt bearing tracking number EL335519721US, dated November 19, 2016. An inquiry with the United States Postal Service regarding the package identified with tracking number EL335519721US shows that the package was sent from Rochester, New York, on November 19, 2016, and was delivered in Dallas, Texas, on November 21, 2016. This USPS record shows the package was listed as being delivered to an individual and signed for by "MG", which your affiant notes are the initials of Michael GALJOUR.

63.    DOWNEY also explained in his post arrest statement that                works for GALJOUR and helps ship the methamphetamine. DOWNEY stated that he has received a package containing methamphetamine from                on one or two occasions. On January 31, 2017, your affiant conducted an analysis of the text messages between DOWNEY and

26

These text messages were consensually given to your affiant by DOWNEY as previously described in paragraph 33 of this affidavit. In detail, your affiant reviewed these text messages between DOWNEY, at cellular telephone number 585-472-4706, and ▮▮▮▮ at cellular telephone number ▮▮▮▮ One of these text messages shows a photograph screenshot of a FedEx receipt for a package bearing tracking number 784618016570. A check with FedEx regarding the package assigned to tracking number 784618016570 shows that this package was shipped on November 11, 2016, from Grand Prairie, Texas, and was delivered on November 12, 2016, at 8:38 AM in Rochester, New York. Previous inquiries of this telephone number utilizing a law enforcement information database showed that it is subscribed to ▮▮▮▮ at ▮▮▮▮

64.     In November of 2016, your affiant received a Texas Department of Motor Vehicles photograph of ▮▮▮▮ Your affiant was able to compare the photograph of ▮▮▮▮ which was provided by the Texas Department of Motor Vehicles to the photograph of ▮▮▮▮ retrieved from GALJOUR's Face Book page. Your affiant notes the two photographs appear to be the same person.

## CONCLUSION

WHEREFORE, based upon the foregoing, your affiant respectfully submits that there is probable cause to believe that on or about and between July 15, 2016 and December 7, 2016, Michael DOWNEY, Michael MADISON, Michael GALJOUR, and ▮▮▮▮

27

did violate Title 21, United States Code Section 846 (conspiracy to possess with

intent to distribute a mixture or substance containing methamphetamine, a Schedule II

controlled substance).

BRIAN HANLEY
Special Agent
Drug Enforcement Administration

Sworn to me before this
29 day of September 2017.

HON. JONATHAN W. FELDMAN
United States Magistrate Judge

28

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 1 8 2017

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                                    NO.  3:17-MJ-761-BK

MICHAEL GALJOUR

## MOTION FOR DETENTION

The United States moves for detention of defendant, **Michael Galjour**, pursuant

to Crim. Rule 32.1(a)(6) and 18 U.S.C. §3143(a).

   1. Eligibility of Case.   This case is eligible for a detention order because the case

involves (check all that apply):

_____  Crime of violence (18 U.S.C. §3156);

_____  Maximum sentence life imprisonment or death

__x__  10 + year drug offense

_____  Felony, with two prior convictions in above categories

__x__  Serious risk defendant will flee

_____  Serious risk obstruction of justice

_____  Felony involving a minor victim

_____  Felony involving a firearm, destructive device, or any other

           dangerous weapon

_____  Felony involving a failure to register (18 U.S.C. § 2250)

_____  Petition for Supervised Release Revocation was filed

2. <u>Reason for Detention.</u>  The Court should detain defendant because there are no

conditions of release which will reasonably assure (check one or both):

      x   Defendant's appearance as required

      x   Safety of any other person and the community

   3. <u>Rebuttable Presumption.</u>  The United States will/will not invoke the rebuttable

presumption against defendant because (check one or both):

     \_\_\_\_ Probable cause to believe defendant committed 10+ year drug

offense or firearms offense, 18 U.S.C.§924(c)

     \_\_\_\_ Probable cause to believe defendant committed a federal crime of

terrorism, 18 U.S.C. §2332b(g)(5)

     \_\_\_\_ Probable cause to believe defendant committed an offense involving

a minor, 18 U.S.C. §§1201, 2251

     \_\_\_\_ Previous conviction for "eligible" offense committed while on

pretrial bond

     \_\_\_\_ Probable cause to believe Defendant violated terms of supervised

release, FRCP 32.1(a)(6).

4. <u>Time For Detention Hearing.</u>  The United States requests the Court conduct the

detention hearing,

    \_\_\_\_\_ At first appearance

    \_\_x\_\_ After continuance of \_\_2\_\_ days (not more than 3).

DATED this <u>18th</u> day of <u>October,</u> 2017.

    Respectfully submitted,

    JOHN R. PARKER
    UNITED STATES ATTORNEY


    <u>/s/ Mark J. Tindall</u>
    Mark J. Tindall
    Assistant United States Attorney
    Texas Bar No. 24071364
    1100 Commerce Street, Third Floor
    Dallas, Texas 75242-1699
    Telephone: 214-659-
    Facsimile:  214-767-
    Email mark.tindall@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel for the defendant in

accordance with the Federal Rules of Criminal Procedure on this <u>18th</u> day of October,

2017.

    <u>/s/ Mark J. Tindall</u>
    Mark J. Tindall
    Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

USA
     Plaintiff,

v.

Michael Galjour
     Defendant.

)
)
)
)
)
)
)
)

Case Number: 3:17-mj-00761-BK

## ORDER APPOINTING FEDERAL PUBLIC DEFENDER

Based on the defendant's sworn Financial Affidavit and representations in open court, the

Court finds that the defendant is financially unable to obtain counsel. Pursuant to 18 USC § 3006A,

the Federal Public Defender for the Northern District of Texas is appointed as counsel of record for

the defendant for all proceedings, including any appeal.

SO ORDERED ON 10/18/2017.


Renee Harris Toliver
Magistrate Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case No. 3:17-mj-00761-BK *SEALED* |
| | § | |
| v. | § | |
| | § | |
| MICHAEL  GALJOUR (1) | § | Charging District's Case No. 17-MJ-648 |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the Western District of New York, Rochester Division USA vs. Michael Galjour, et al.

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)    a hearing on any motion by the government for detention;

(6)    request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☒    an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 1 8 2017
CLERK, U.S. DISTRICT COURT

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 18th day of October, 2017

_____
Defendant's Signature

_____
Signature of defendant's attorney

John M. Nicholson
Printed name of defendant's attorney

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case No. 3:17-mj-00761-BK *SEALED* |
| | § | Other Dist. Docket No. 17-MJ-648 |
| v. | § | Charge Pending: PWID Methamphetamine |
| | § | Western District of New York |
| MICHAEL  GALJOUR (1) | § | Rochester Division |

### REPORT OF PROCEEDINGS UNDER RULES 5(c)(3) and 5.1
### AND ORDER ENTERED THEREON

The defendant is charged in the above-referenced district with the offense of **Possession with Intent to Distribute Methamphetamine**. Having been arrested in this district on a warrant issued on that charge, he appeared before me for proceedings as follows:

**Rule 5(c)(3)    Transfer**

- ☑ Defendant waived the requirement that a copy of the warrant be produced.
- ☐ The government has produced a copy of the warrant, and
- ☑ The Court finds that the person before the Court is the defendant named in the indictment, information or warrant because:
  - ☑ The defendant waived identity hearing.
  - ☐ An identity hearing was conducted, and the defendant's identity was established.
- ☐ The Court finds, based on the evidence presented during an identity hearing, that the person before the Court is **NOT** the defendant named in the indictment, information or warrant.

**Rule 5.1:    Preliminary Hearing**

- ☐ No preliminary hearing is necessary because the defendant is charged by indictment.
- ☐ The defendant waived a preliminary hearing.
- ☑ The defendant elected to have a preliminary hearing in the district where the prosecution is pending.
- ☐ The defendant elected to have a preliminary hearing in this district, and based on the evidence presented during the hearing, the Court finds that:
  - ☐ There is probable cause to believe that the defendant committed the offense(s) charged.
  - ☐ There is **NOT** probable cause to believe that the defendant committed the offense(s) charged.

**Rule 5(d)(3)    Detention Hearing**

- ☐ No detention hearing is necessary because the government did not move to detain the defendant.
- ☐ The defendant waived a detention hearing.
- ☑ The defendant elected to have a detention hearing in the district where the prosecution is pending.
- ☐ The defendant elected to have a detention hearing in this district, and based on the evidence presented during the hearing, the Court finds that:
  - ☐ The defendant should be detained.
  - ☐ The defendant should be released on bond.

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

OCT 1 8 2017

CLERK, U.S. DISTRICT COURT
By _____

**ORDER ENTERED ON THE FOREGOING REPORT**

TO:  UNITED STATES MARSHAL

☑   You are commanded to transfer the above-named defendant forthwith to the district in which he/ is charged and there deliver him to the United States Marshal for that district or to some other officer authorized to receive him.

☐   It is ORDERED that this defendant be released from custody on bond pending further proceedings.

☐   It is ORDERED that this defendant be discharged.

DATE: _10/18/2017_

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE